**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **ROGER C. EASTHAM,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **No. 3:10-CV-2001-L** |
| | § | |
| **COMMISSIONER OF THE** | § | |
| **SOCIAL SECURITY ADMINISTRATION,** | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This is an appeal from the decision of the Commissioner of the Social Security Administration

("Commissioner") denying the claim of Roger C. Eastham ("Plaintiff") for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and  XVI of the Social

Security Act (the "Act").  The Court considered Plaintiff's Brief, Defendant's Brief, and Plaintiff's

Reply Brief.  The Court reviewed the record in connection with the pleadings.  The final decision of

the Commissioner is **REVERSED** and **REMANDED** for further proceedings.

**Background**[1]

**Procedural History**

On December 31, 2007, Plaintiff filed applications for DIB and SSI benefits, alleging

disability beginning on March 1, 1999, due to major depressive disorder ("MDD") with psychosis.

(Tr. 40, 137-145, 157.)  The Commissioner denied his applications initially and upon reconsideration.

(Tr. 40.)  At Plaintiff's request, an Administrative Law Judge ("ALJ"), Marguerite Lokey, held a

hearing on May 4, 2009.  (Tr. 53-78, 103-107.)  Plaintiff and a Vocational Expert ("VE") testified.

(Tr. 53-78.)      The ALJ found that Plaintiff has severe impairments of MDD, anxiety, and post-

---

[1] The following background facts are taken from the transcript of the administrative proceedings,
which is designated as "Tr."

traumatic stress disorder ("PTSD") (Tr. 42).  The ALJ determined that Plaintiff is unable to perform his past relevant work, but based upon the VE testimony, the ALJ concluded that Plaintiff can perform other work and is not disabled.  (Tr. 46-47.)  When the Appeals Council declined Plaintiff's request for review on August 10, 2010 (Tr. 1-3), the ALJ's decision became the final decision of the Commissioner, from which Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g).

## Plaintiff's Age, Education, and Work Experience

Plaintiff was born on July 14, 1956, and has a ninth grade education (Tr. 57).   Plaintiff was 52 years old at the time of the hearing.  (Tr.  46.)  He has past relevant work performing odd jobs as a maintenance man, generally once or twice a week. (Tr. 57-58.)

## Plaintiff's Medical Evidence

Plaintiff maintained that he is unable to work because of MDD with psychosis.  He claimed he cannot sleep, has a loss of memory, experiences episodes of anxiety, and cannot keep a job.  (Tr. 157.)  Additionally, he stated he has difficulty completing tasks and isolates himself from others by staying at home.  (Tr. 177.)  He claimed to experience auditory and visual hallucinations.  He complained of no energy, feelings of  worthlessness, and an inability to focus.  He  reported flashbacks, symptoms of PTSD, and feeling agitated and irritated all of the time.  (Tr. 185.)  He also felt anxious and paranoid.  (*Id.*)  Sometimes he would forget to eat and bathe. (Tr. 201-202.)  He reported that he didn't like being around people.  (Tr. 218.)

Plaintiff was seen by his primary care physician, Dr. Robert Megna, in August 2006, requesting a less expensive medication for depression than Lexapro, which Dr. Megna had previously prescribed.  (Tr. 252.)  Plaintiff complained of depression, stress, and sleep disturbance.  (*Id.*)  Dr. Megna prescribed Celexa, an antidepressant.  (Tr. 257.)

Plaintiff was evaluated by Adapt Institute of Texas ("Adapt") on December 3, 2007.  (Tr. 283.) Plaintiff reported severe depression and suicidal thoughts over the past year, as well as auditory hallucinations.  He also indicated that he had witnessed a couple of murders some years ago.  He reported decreased sleep, energy, libido, and memory.  (Tr. 287.)  He also reported crying spells, mood swings, increased irritability, and decreased motivation.  He claimed he talks to himself and to inanimate objects, and takes naps almost daily.  He stated that he saw a friend murdered and then helped to move the body.  (*Id.*)  He advised that several friends have been murdered lately.  (Tr. 290.) A mental status examination found him to be depressed, with a constricted affect, tangential thoughts, and ruminative thought processes.  (Tr. 285.)  His grooming and insight were poor.  He believed that people talked about him.  (*Id.*)  He was diagnosed with MDD, recurrent and severe, with psychosis, and a Global Assessment of Functioning ("GAF") score of 43 was assessed.[2]  (Tr. 286.)

Progress records indicated that despite treatment, Plaintiff continued to complain of fatigue, sleep disturbance, and limited socialization and activities.  (Tr. 293-94.)  The diagnosis and assessment of functioning remained unchanged.  (Tr. 295.)

A clinical psychologist, Dr. Katherine S. Donaldson, examined Plaintiff on February 27, 2008, at the request of the state agency.  (Tr. 306.)  He complained of depression and auditory hallucinations.  He also reported witnessing two murders, after which he withdrew from his friends. (*Id.*)  He states that he has not coped well thereafter.  (Tr. 307.)  He reported intrusive thoughts, sadness, anger, fatigue, difficulty with concentration and memory, and feelings of hopelessness,

---

[2]  Pursuant to American Psychiatric Association criteria, such a score indicates serious symptoms, or any serious impairment in social, occupational, or school functioning.  Examples given are of an individual who is unable to keep a job.  *See*, American Psychiatric Association <u>Diagnostic and Statistical Manual of Mental Disorders, 4th Ed. (DSM-IV)</u>, pp. 32-34.

helplessness, and worthlessness.  (*Id.*)  Dr. Donaldson noted memory and concentration problems. She diagnosed PTSD and moderate MDD.  (Tr. 309-310.)  Plaintiff was deemed to be unable to handle benefits.  (Tr. 305.)

A state agency physician ("SAMC") reviewed the evidence and determined that Plaintiff has an affective disorder, and anxiety-related disorder which have resulted in moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace.  (Tr. 327, 337.)  The SAMC's mental residual functional capacity ("RFC") assessment found Plaintiff moderately limited in 9 of 20 occupational categories, including the ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and to respond appropriately to changes in the work setting.  (Tr. 341-342.)

### Plaintiff's Testimony at the Hearing

Plaintiff testified that he doesn't trust people and becomes angry when he is around people. He doesn't want to leave the house.  (Tr. 63.)  He only gets 4-5 hours of sleep every day.  (Tr. 68.) He continues to have trouble with his memory.  (Tr. 69.)  He does odd jobs, such as mowing yards or home repair, once or twice a week, but he only works for people he has known for a long time because he doesn't trust strangers.  (Tr. 58, 72.)  He interacts with his mother, his sister, and a friend. (Tr. 71.)

**The Hearing**

The ALJ asked the VE about the exertional level and skill level of a handyman. (Tr. 73.) The VE responded that the handyman job is medium, skilled, with an SVP of 7. (*Id.*) The ALJ posed a hypothetical question to the VE which assumed a limitation to only simple, routine work which did not involve public contact and only incidental contact with others. Dr. Irons, the VE, testified that such limitation would allow the jobs of light fixture servicer with 6, 200 jobs statewide and 70,000 nationally, meat trimmer which is medium unskilled with 900 jobs statewide and 10,500 nationally, and used car lot porter which is medium, unskilled with an SVP of 2 with 1,200 jobs statewide and 10,500 nationally. (Tr. 74-75.)

**The Decision**

In her December 3, 2009 decision, the ALJ analyzed Plaintiff's claim pursuant to the five-step sequential evaluation process for a claim of disability.[3] (Tr. 40-48.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability. (Tr. 42, Finding No. 2.) At step two, the ALJ found that Plaintiff had the severe impairments of MDD, anxiety, and PTSD. (Tr. 42, Finding No. 3.) At step three, the ALJ determined that Plaintiff did not have an impairment that met or equaled the requirements of any listed impairments for presumptive disability under the regulations. (Tr. 43, Finding No. 4.)

---

[3]The five analytical steps involve (1) whether the claimant is performing "substantial gainful activity"; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. §§ 404.1520, 416.920. "A finding that a claimant is disabled or not disabled at any point in the five-step process is conclusive and terminates the [Commissioner]'s analysis." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

5

Next, the ALJ found that Plaintiff had the RFC to perform work at all exertional levels so long as the work was simple, routine, not with the public, and involved only incidental contact with others. (Tr. 43, Finding No. 5.)  At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (Tr. 46, Finding No. 6.)  At step five, upon consideration of the VE's testimony, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy.  (Tr. 46, Finding No. 7.)  The judge  concluded that Plaintiff was not disabled within the meaning of the Act at any time from his alleged disability onset date through the date of her decision. (Tr. 47.)

### Standard of Review

To be entitled to social security benefits, a plaintiff must prove that he is disabled for purposes of the Social Security Act.  *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995);  *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).  The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled.  Those steps are:

1.      An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.      An individual who does not have a "severe impairment" will not be found to be disabled.

3.      An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

6

4.      If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

5.      If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the inquiry, the burden lies with the claimant to prove his disability. *Leggett*, 67 F.3d at 564.  The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id*.  Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination is afforded great deference.  *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C.A. § 405(g).  Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance."  *Leggett*, 67 F.3d at 564.  The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.  However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."  *Newton v. Apfel*, 209 F.3d 448, 455

(5th Cir. 2000).  Moreover, the terms of 20 C.F.R. § 404.1527 define "medical opinions" and instruct claimants how the Commissioner will consider the opinions.[4]  In the Fifth Circuit, "the opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton*, 209 F.3d 448, 455 (5th Cir. 2000); *see Floyd v. Bowen,* 833 F.2d 529, 531 (5th Cir.1987).

## Issues

1.      Whether the Commissioner provided a complete administrative record.

2.      Whether the Commissioner properly considered all of Plaintiff's severe exertional and nonexertional impairments;

3.      Whether the ALJ properly evaluated the medical opinion evidence; and

4.      Whether the ALJ properly evaluated Plaintiff's credibility.

## Analysis

### Whether the Commissioner Provided a Complete Administrative Record

Plaintiff contends that because the Appeals Council may have failed to consider newly submitted evidence in connection with the Request for Review, the Court must remand the matter to the Commissioner to admit the new and material evidence into the record and to consider it.

---

[4]  The terms of 20 C.F.R. § 404.1527(a)(2) provide:

(2) Evidence that you submit or that we obtain may contain medical opinions. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

This Court can remand a case for consideration of new evidence only if the claimant has shown good cause why the evidence in question was not presented in a prior proceeding. 42 U.S.C. § 405(g). Plaintiff states that as part of his appeal, his counsel filed a brief with the Appeals Council setting forth his reasons that the ALJ's decision should be reversed and attaching records of Adapt, Plaintiff's treating psychiatric facility, covering the period of September 4, 2009 through April 8, 2010.[5] Plaintiff claims that an additional copy was sent to Branch 23 of the Appeals Council on July 12, 2010, specifically referring to the additional medical records. (Tr. 17.) The Appeals Council denied review indicating that it "considered the reasons you disagree with the decision." (Tr. 1.) However, the Appeals Council did not mention the additional medical records, or include them in the administrative record.

The Commissioner does not address whether Plaintiff has shown good cause why the medical records were not presented in a prior proceeding. The Court finds that Plaintiff's undisputed facts constitute good cause.

Once the claimant has shown good cause, he must show that the evidence is material and that it is new. The Commissioner cites *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989) for the proposition that to be material, evidence must relate to the period on or before the ALJ's decision and not be cumulative. The Commissioner contends that Plaintiff's submission consists of five treatment records from Adapt dated September 4, 2009, December 31, 2009, February 25, 2010, March 17, 2010, and April 8, 2010. The Commissioner argues that except for the September 4, 2009 record which the Commissioner contends is cumulative, the records are outside the relevant time period for this case. However, "[s]ubsequent medical evidence is relevant . . . because it may bear upon the

---

[5] Plaintiff attaches the records to his brief in this appeal as an Appendix. (Doc. 16.)

severity of the claimant's condition before the expiration of his or her insured status." *Ivy v. Sullivan*, 898 F.2d 1045, 1049 (5th Cir. 1990) (quoting *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984); *Parsons v. Heckler*, 739 F.2d 1334 (8th Cir. 1984).

When a claimant is unrepresented by counsel, as Plaintiff was in this case, the ALJ has a duty "scrupulously and conscientiously [to] probe into, inquire of, and explore for all the relevant facts." *Kane v. Heckler,* 731 F.2d 1216, 1219-20 (5th Cir. 1984) (internal quotation and citation omitted). When she fails in that duty, she does not have before her sufficient facts on which to make an informed decision. *Id.* Consequently, her decision is not supported by substantial evidence. *Id.* In this case, the ALJ's decision is based on medical records from August 2006 to March of 2009. The ALJ relies upon self-reports from Plaintiff that he was doing better on August 13, 2008, in October, 2008, on December 8, 2008, and in March 2009. (Tr. 45.) At the hearing on May 4, 2009, Plaintiff was not represented by counsel. The ALJ told Plaintiff that before she could make a decision, she needed to obtain Plaintiff's updated treatment records. (Tr. 77-78.) In the decision, the ALJ referred to "a paucity of objective medical evidence." (Tr. 45.) At the time of the decision, the ALJ did not have before her Plaintiff's treating psychiatrist's record of September 4, 2009. This record would have shown that close to the time of the ALJ's December 3, 2009 decision, Plaintiff had decreased memory, talked to himself, felt isolated and didn't trust people, and had suicidal thoughts, nightmares and persistent depression. (Pl.'s App. 8.) It would have shown that the psychiatrist's objective determination on that date was that Plaintiff's thoughts were disorganized and tangential and that the diagnosis was MDD with psychosis and PTSD. (*Id.* 9.) The new evidence contains a significant update that includes objective evidence of Plaintiff's mental impairment. The Court finds that the September 4, 2009 record is new and material.

The other records indicated that Plaintiff continued to express paranoid thoughts, reported hallucinations, complained of medication side-effects, and reported anxiety and poor energy. A GAF score of 45 was assessed. The evidence of the continuation of Plaintiff's mental impairments is material because it contributes to the longitudinal picture of Plaintiff's functional limitations and supplements the incomplete medical records that ended with March 2009. This is important because Plaintiff was diagnosed with PTSD, "'an unstable condition that . . . may wax and wane after manifestation.'" *Likes v. Callahan*, 112 F.3d 189, 191 (5th Cir. 1997) (quoting and adopting the rule of *Jones v. Chater*, 65 F.3d 102, 103 (8th Cir. 1995). The Court finds that the evidence is new and material. The Fifth Circuit Court of Appeals has recognized that realistically, a person with a mental impairment may be unable to engage in competitive employment because his ability to work may be sporadically interrupted by unforeseeable mental setbacks. *Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986). Thus, there is a reasonable possibility the new evidence would have made a difference in the outcome. Accordingly, the case should be remanded to the Commissioner to admit the new evidence into the record and to consider it.

### Whether the Commissioner Properly Considered All of Plaintiff's Impairments[6]

Plaintiff argues that the ALJ failed to properly address his moderate limitations with respect to concentration, persistence, and pace when determining his RFC and questioning the VE. The Commissioner argues that the ALJ properly considered Plaintiff's abilities with regard to concentration, persistence, or pace because the ALJ's decision to restrict Plaintiff to "simple, routine

---

[6] Plaintiff does not argue, as the Commissioner contends, that the ALJ was required to complete a Psychiatric Review Technique Form "PRTF" in each of the functional areas pursuant to 20 C.F.R. §§ 404.1520a(e)(4), 416.02a(3)(4). Plaintiff recognizes that a form is a way of expressing the ALJ's findings with respect to the degree of limitations in each of the functional areas. Accordingly, the Court does not consider the lack of a form to be an issue.

work" was sufficient to account for Plaintiff's moderate limitations in concentration, persistence, or pace." (Tr. 43.)

There must be evidence in the record to support the ALJ's RFC determination. The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities.  Social Security Ruling ("SSR") 96-5p (July 2, 1996). The RFC assessment is based upon *"all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations.  SSR 96-8p (July 2, 1996) ("SSR 96-8p") (emphasis in original). The ALJ is responsible for determining a claimant's RFC.  *Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir. 1995). In making the RFC assessment and in determining the limitations imposed by a claimant's impairment(s), the ALJ is instructed to consider the entire record. SSR 96-8p. As noted in SSR 96-8p:

> An individual's RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

With respect to Plaintiff's RFC, the ALJ stated: "[a]fter careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work at all exertional levels.  He can perform simple, routine work, not with the public, with only incidental contact with others."  (Tr. 43, Finding No. 5.)

At the hearing, the ALJ asked the VE whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and RFC. The ALJ stated that, "the vocational expert testified that given all of these factors the individual would be able to perform the

requirements of representative occupations such as a light fixture servicer with 70,000 jobs in the nation, including 6,200 in the state of Texas; as a meat trimmer with 9,500 jobs in the nation, including 900 in the state of Texas; as a porter with 10,500 in the nation, including 1,200 in the state of Texas." (Tr. 74-75.) The VE never testified that his testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). Nevertheless, the ALJ made the perfunctory statement that the VE's testimony was consistent with the DOT. (Tr. 47.) While noting this lacunae, the Court also notes that the ALJ never asked the VE if Plaintiff could perform his past relevant work, and the VE never so testified. Plaintiff contends the ALJ's limitations "to simple, routine work, not with the public, with only incidental contact with others" does nothing to address the moderate limitations in concentration, persistence, or pace which both the ALJ and the SAMC found to exist. The proper standard in the Fifth Circuit for determining whether a hypothetical question is defective and, if so, whether the defective hypothetical question constitutes reversible error is articulated in *Bowling v. Shalala*:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.

36 F.3d 431, 436 (5th Cir. 1994). Moreover, "failure to point out the problems in a defective hypothetical [does not] automatically salvage[] that hypothetical as a proper basis for a determination of non-disability." *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001).

In this case, the ALJ asked the VE if there would be any jobs an individual could perform considering a hypothetical individual of Plaintiff's age, education, and work experience without particular physical limitations but with the limitation that he could only perform simple, routine work, and not with the public.   (Tr.  74-75.)   The VE asked whether there was any exertional level limitation and the ALJ responded by asking him to identify jobs that were "not sedentary."  The VE identified the jobs of light fixture servicer, meat trimmer, and porter.  (Tr.  74-75.) The ALJ then asked the VE whether there were jobs if the same individual could not work around anyone at all. The VE replied that there were not. (Tr.  75.)  The ALJ asked if a person would be able to maintain employment if he were to miss at least three days of work per month, and the VE responded that the person would not.  (Tr.  76.)  Then the ALJ asked if the VE had any opinion about being able to "stay on task during a day."  The VE responded that if ten minutes or more per hour or six hours per week on task were lost, employment would be precluded.  (Tr.  77.)  The ALJ rephrased the VE's testimony, verifying that he meant that "if a person could not concentrate to the extent that they would miss at least 10 minutes per hour, they would not be able to work." (*Id.*)

Plaintiff cites no Fifth Circuit precedent but relies upon a Seventh Circuit case in which the ALJ's RFC determination and hypothetical to the VE were similar to those in this case,  *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).   The Seventh Circuit Court of Appeals concluded in *O'Connor-Spinner* that it was not clear whether the hypothetical, which included a restriction to repetitive tasks with simple instructions, would cause the VE to eliminate positions that would pose significant barriers to someone with the applicant's depression-related problems in concentration, persistence, or pace.  Like the state agency examiner in this case, the state examiner's RFC determination in *O'Connor-Spinner* explicitly noted that there were at least moderate

limitations, and the ALJ in *O'Connor-Spinner* agreed with that determination.  The Court held that limiting a hypothetical to simple, repetitive work does not necessarily address deficiencies of concentration, persistence, or pace.  *Id.*

In *Newton v. Chater,* 92 F.3d 688 (8th Cir.1996), a case which also has some similarities to this case, the court found that a hypothetical was defective because it failed to adequately convey the claimant's deficiencies in concentration, persistence, or pace. The ALJ's hypothetical had described a person with a minimal ability to read and write, a borderline range of intelligence, a ninth or tenth grade education, an inability to perform highly skilled or technical work, a capacity for simple jobs, and a demonstrated ability to control his drinking problem.  *Id.* at 694. The Commissioner argued that the deficiencies of concentration, persistence, or pace did not have to be included in the hypothetical because the ALJ had limited the hypothetical to simple jobs and two medical professionals had testified that the claimant's deficiencies did not significantly limit his abilities to follow short and simple instructions and make simple work-related decisions.  *Id.* at 695. The court disagreed, noting that the VE had testified on cross-examination that the claimant's concentration and persistence deficiencies related to basic work habits that were needed to maintain employment. Thus, that court remanded for further proceedings.  Like the VE in *Newton*, the VE in this case testified that concentration or persistence deficiencies would preclude employment.  (Tr.  77.)

The Court finds the Commissioner's contention that the phrase "simple, repetitive work" encompasses difficulties with concentration, persistence, or pace is not persuasive.  Indeed, simple, repetitive, assembly-line work might well require extensive focus or speed.  That the ALJ did not equate "simple, repetitive work" with work requiring concentration, persistence, or pace, is evinced by his subsequent hypothetical question concerning the ability to "stay on task" which the ALJ asked

only after the VE had identified the three jobs.  The Court concludes that the ALJ's RFC assessment did not include all of the limitations shown by the evidence and that the ALJ's hypothetical to the VE which resulted in the VE's list of other work such a person could perform was deficient.

Thus, the ALJ failed to incorporate reasonably into the hypothetical all Plaintiff's disabilities that the ALJ had previously recognized.  With respect to whether Plaintiff was afforded the opportunity to correct deficiencies in the ALJ's hypothetical questions to the VE, due to Plaintiff's impaired mental status and his lack of counsel, Plaintiff had no realistic opportunity to correct any defects in the hypothetical.  Under *Bowling*, the ALJ's determination of non-disability based on the first hypothetical, which left out the functional limitation in Plaintiff's concentration, persistence, or pace, is reversible error.  *See Bowling*, 36 F.3d at 433.

When a claimant appears without counsel, the ALJ's usual duty to develop the record "fully and fairly" becomes "heightened," such that he must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."   *Kane*, 731 F.2d at 1219-20.  The ALJ failed to meet this burden here. The ALJ's errors in the adjudication of Plaintiff's functional limitations in concentration, persistence, or pace are not harmless, as indicated by the VE's answer to the ALJ's later questions.  Reversal and remand for further development of this issue is required.

On remand, the ALJ should also clarify the extent and specific respects in which Plaintiff's concentration, persistence, and pace is moderately deficient.  The basis upon which the ALJ's decision purports to rest must be set forth with such clarity as to be understandable.  A reviewing court should not be compelled to guess at the theory underlying the agency's action.  *See SEC v. Chenery*, 332 U.S. 194, 196-97 (1947); *see also Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994) (citing *Chenery* and reversing on basis that the "ALJ's vague and confusing reference" to vocational

testimony left the court unsure that the ALJ had properly considered it); *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (determinations of non-disability must "stand or fall with the reasons set forth in the decision as affirmed by the Appeals Council"); *Orphey v. Sec'y of H.H.S.,* 962 F.2d 384, 386-87 (5th Cir. 1992) (reversing and remanding because the ALJ's decision was unclear on whether he had properly considered claimant's substance abuse as an impairment that could be potentially disabling); *Bagwell v. Barnhart*, 338 F. Supp. 2d 723, 735 (S.D. Tex. 2004) (court could "scarcely perform its assigned review function" when the ALJ failed to reconcile inconsistencies pertaining to the RFC finding).

Because the ALJ's unfavorable decision was based on the VE's answers to the defective hypothetical question, substantial evidence does not support the ALJ's finding that Plaintiff was not disabled during the period of March 1, 1999 to December 3, 2009.  Therefore, the case should be reversed and remanded for further administrative proceedings consistent with this decision.

### Whether the ALJ Properly Evaluated the Medical Opinion Evidence

The Court begins by noting that the record contains only GAF scores in the 40's and 50's assessed by treating and consultative psychiatrists.  Plaintiff contends that Plaintiff's treating psychiatric sources at Adapt consistently indicated Plaintiff's GAF scores were in the 40's, indicative of severe impairments.  The Court finds that the ALJ substituted her own lay opinion for that of the treating and consultative psychiatrists, stating, "[t]he undersigned does not accept the GAF scores in the 40's or 50's as [Plaintiff's] functioning is well above that level." (Tr. 46.) The Commissioner sidesteps the fact an ALJ may not substitute the ALJ's lay opinion for that of a medical opinion, stating that substantial evidence (such as Plaintiff's work as a handyman and testimony that he had friends) supports the ALJ's finding.

17

The GAF scoring system was developed from "the rating of overall psychological functioning on a scale of 0-100 . . . operationalized by Luborsky in the Health-Sickness Rating Scale (Luborsky, L: "Clinicians' Judgments of Mental Health." Archive of General Psychiatry 7:407-417, 1962). *See*, American Psychiatric Association <u>Diagnostic and Statistical Manual of Mental Disorders, 4th Ed.</u> <u>(DSM-IV)</u>, fn at 34.  The ALJ unquestionably lacks credentials as a "clinician."  Social Security law does not allow an ALJ to determine that a claimant's GAF is higher than the GAF scores assessed by the treating or consultative psychiatrists.

Judge Posner warned of succumbing to the temptation to play doctor:

> But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor . . . . The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them.  Common sense can mislead; lay intuitions about medical phenomena are often wrong.

*Schmidt v.  Sullivan*, 914 F.2d 117, 118 (7th Cir.  1990).  *See Frank v.  Barnhart*, 326 F.3d 618 (5th Cir.  2003).  Additionally, as Plaintiff points out, Adapt is Plaintiff's treating psychiatric source, and the ALJ did not follow the requirements of the regulations and this Circuit in evaluating the treating source opinions.   Adjudicators must weigh medical source statements under the rules set out in 20 CFR 404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions. (SSR 96-5p.) "The regulations recognize that treating sources are important sources of medical evidence and expert testimony, and that their opinions about the nature and severity of an individual's impairment(s) are entitled to special significance; sometimes the medical opinions of treating sources are entitled to controlling weight." (SSR 96-5p.)

"[B]efore rejecting a treating source opinion, the ALJ must consider the factors outlined in Section 404.1527(d) of the administrative regulations, including: the length of the treatment relationship, frequency of examination, nature and extent of the treating relationship, evidence supporting the opinions, the consistency of those opinions, and medical specialization. *See* 20 C.F.R. § 404.1527; *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). SSR 96-2p, 96-5p." *Sherman v. Barnhart*, 2001 WL 34373157 * 6 (N.D. Tex. 2001) (Bleil, MJ). The ALJ failed to properly consider the opinions of Plaintiff's treating psychiatrists.

This is not a situation in which the ALJ credited a higher GAF score assessed by a psychiatrist. Rather, the ALJ committed legal error by assessing a higher GAF score than any of the treating or consulting psychiatrists had assessed. The ALJ also erred by failing to consider the factors set forth in the Commissioner's regulations for evaluating the treating psychiatrists' opinions. These errors are not harmless because if the ALJ had properly considered them, she might have found Plaintiff disabled.

### Whether the ALJ Failed to Properly Evaluate Plaintiff's Credibility

Plaintiff contends that the ALJ improperly assessed his credibility by failing to consider the requirements of SSR 96-7p. The ALJ discounted Plaintiff's credibility by picking and choosing inconsistencies in historic dates which Plaintiff failed to remember, such as the date his depression began. The ALJ gave no consideration to the possible effects Plaintiff's depression and mental problems might have had on his memory for dates or other events.

To decide that Plaintiff was not disabled, the ALJ picked and chose to believe several *subjective* reports by Plaintiff that his mood was better and he was more relaxed, that his depression was not bad, that he was doing well on current medications, that his mood was good most days, and

19

that his energy level was okay (Tr. 45.)  However, the ALJ found Plaintiff's credibility diminished by "inconsistencies between Plaintiff's allegations and the paucity of *objective* medical evidence." (Tr. 45.)  The ALJ rejected Plaintiff's credibility because he still worked as a handyman, assuming he would have had to solicit business or maintain appropriate relationships with those for whom he performed jobs, completely disregarding Plaintiff's testimony that he only works for people he has known for a long time and trusts.  The Court finds that the ALJ failed to evaluate Plaintiff's credibility in accordance with the regulations and that the unfavorable credibility determination is not supported by substantial evidence.

**Recommendation**

The Court recommends that the District Court reverse and remand the Commissioner's decision for further consideration.

Signed, February 17, 2012.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within fourteen days after service.  A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).